

**SO ORDERED.**

**SIGNED this 26 day of September, 2019.**

**David M. Warren**
**United States Bankruptcy Judge**

---

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:                                           CASE NO. 18-05791-5-DMW

APRYL BERNADETTE MORRISON
                                                 CHAPTER 13
        DEBTOR

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

This matter comes on to be heard upon the Chapter 13 Plan ("Plan") filed by Apryl Bernadette Morrison ("Debtor") on March 4, 2019 and the Chapter 13 Trustee's Objection to Confirmation filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on March 8, 2019. The court conducted a hearing in Raleigh, North Carolina on June 5, 2019. Travis Sasser, Esq. appeared for the Debtor, and Michael B. Burnett, Esq. appeared for the Trustee. At the conclusion of the hearing, the court took the matter under advisement. Based upon the pleadings, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this

matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.　　　The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on December 3, 2018.  The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

3.　　　Wells Fargo Bank, N.A. ("Wells Fargo") filed a Proof of Claim on January 14, 2019 asserting an unsecured claim ("Claim") with a balance of $15,605.96 on the petition date. The Claim is based on a Consumer Credit Agreement ("Agreement") dated May 31, 2017 for a student loan incurred by the Debtor's daughter ("Daughter"). The Debtor is a cosigner of the Agreement.  The Agreement states as follows:

> FEDERAL NOTICE TO COSIGNER:
> You are being asked to guarantee this debt. . . . . If the borrower doesn't pay the debt, you will have to. . . . The holder of this Credit Agreement may collect this debt from you without first trying to collect from the borrower.

4.　　　Pursuant to the Agreement, the Daughter borrowed the amount of $15,000.00 at an interest rate of 12.14%.  The Agreement indicates that the loaned funds are for tuition costs for the Daughter's undergraduate freshman year, and the Daughter is expected to graduate on May 15, 2021.

5.　　　At the hearing, the Trustee presented a Wells Fargo Collegiate Loan Approval Disclosure ("Disclosure") provided to him by Wells Fargo.  The Disclosure indicates that repayment under the Agreement will be in deferment from June 14, 2017 through November 15, 2021.  Presumably, this deferment period is conditioned upon the Daughter remaining enrolled as an undergraduate student.  During the deferment period, if no payments are made to Wells Fargo, the Claim will accrue interest totaling $8,062.29.  According to the Disclosure, monthly payments

under the Agreement will begin on December 16, 2021 and will continue for fifteen years at a monthly amount of $278.87.

6.    The Debtor proposes in the Plan to repay Wells Fargo in full as a separately classified unsecured claim, rather than treating Wells Fargo as a general unsecured creditor to be paid a fractional dividend through the Plan.  Under the Plan as proposed, general unsecured creditors, other than Wells Fargo, are projected to receive an approximate thirteen percent dividend over the Debtor's sixty-month applicable commitment period, according to the Trustee's calculations.  If the Claim were treated as a general unsecured claim, then that dividend would change to approximately twenty-five percent based on the increased total of claims in that class and the increase in payments to that class, as more of the Debtor's monthly disposable income would go to that class upon elimination of the separate class for Wells Fargo.[1]

7.    The Debtor asserts that the proposed treatment is permitted under 11 U.S.C. § 1322(b)(1), which states that a plan may

> designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1).  The Debtor notes that some courts have held that the second provision of § 1322(b)(1) only allows different treatment which does not discriminate unfairly, but the Debtor asserts that the language following "however" is not subject to the standard imposed in the first portion of § 1322(b)(1).  In other words, the Debtor argues that Chapter 13 does not prohibit unfair discrimination if the separate classification is the Debtor's consumer debt for which another individual is liable.  In the alternative, the Debtor asserts that the court should find the proposed

---

[1] At the hearing, the Debtor estimated slightly different current and hypothetical dividends.

3

classification does not discriminate unfairly between Wells Fargo and the Debtor's other general unsecured creditors.

8.      The Trustee asserts that even if the proscription against unfair discrimination does not apply to the separate classification of consumer debts of the debtor on which another individual is liable, the exception within § 1322(b)(1) should apply only if the debtor received the benefit of the debt at issue.

9.      The United States Bankruptcy Court for the Eastern District of Virginia examined other courts' interpretations of the language of § 1322(b)(1) in *In re Linton*, No. 11-12258-SSM, 2011 Bankr. LEXIS 2939 (Bankr. E.D. Va. July 27, 2011).  The Honorable Stephen S. Mitchell noted as follows:

> Some courts have construed the statutory language—and, in particular, the 'however' that introduces it—as . . . creating a 'carve-out' to the unfair discrimination standard, thereby automatically sanctioning favored treatment for consumer debts which are co-signed by another individual. *In re Monroe*, 281 B.R. 398 (Bankr. N.D. Ga. 2002). The majority of courts, however, have rejected the view that § 1322(b)(1) grants carte blanche to pay 100% of co-signed debts without regard to the effect of that treatment on the non-preferred creditors. *In re McKown*, 227 B.R. 487 (Bankr. N.D. Ohio 1998) (collecting cases); *In re Martin*, 189 B.R. 619, 628 (Bankr. E.D. Va. 1995) (discussing split and holding that debtor had not sufficiently justified plan treatment that paid 100% of debts on which non-filing spouse was liable while only paying 6.5% to other unsecured creditors).

2011 Bankr. LEXIS 2939, at *6-7.

10.     The provision at issue in this case was added to § 1322(b)(1) through the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984).  The Senate and House Reports for that legislation do not contain any reference to § 1322(b)(1). *See In re McKown*, 227 B.R. 487, 491 (Bankr. N.D. Ohio 1998).  An earlier bill, entitled the Omnibus Bankruptcy Improvements Act of 1983, contained language that was partially incorporated into the Bankruptcy Amendments and Federal Judgeship Act of 1984. *Id.* (citing

4

Omnibus Bankruptcy Improvements Act of 1983, S. 445, 98th Cong., 1st Sess. (1983)).  The

Senate Report for the 1983 bill contains the following language:

> A number of cases have considered whether claims involving co-debtors may be classified separately from other claims. Thus far, the majority of cases have refused to permit such classification on the ground that codebtor claims are not different than other claims. [citations omitted].

> Although there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan. Sometimes, the codebtor will have posted collateral, and the debtor will feel obligated to make the payment to avoid repossession of the collateral. In still other cases, the codebtor cannot make the payment, and the effect of nonpayment will be to trigger a chapter 7 or chapter 13 petition by the codebtor, which may have a ripple effect on other parties as well. For these reasons, separate classification is often practically necessary.

S. Rep. No. 65, 98th Cong., 1st Sess., 17-18 (1983).

11.     The 1983 Senate Report identifies aptly the competing interests that are present

when a debtor is the beneficiary of a claim involving a co-debtor.  When the debtor is not the

primary beneficiary of the claim, though, a debtor is under less pressure to favor payment of that

claim over the debtor's other claims, because the non-debtor beneficiary of the debt should have

his or her own separate incentive or feeling of obligation to maintain payments.  As noted by the

United States Bankruptcy Court for the Eastern District of Washington,

> Underlying the assumption that a debtor will feel a great need to pay in full a co-signed debt between the debtor and a friend or relative is the additional assumption that the co-debt benefited the debtor, not the friend or relative. The obligation to repay arises because the friend or relative extended his or her credit to help the debtor acquire credit. In return for the help, a debtor will feel a moral obligation to repay the loan in full to protect the co-signer.

> However, the same is not true where the debtor extends his or her credit to help the co-signer. No moral obligation exists to repay the loan since no help was given to the debtor. On the contrary, it was the debtor that helped the co-signer. Without the moral obligation to repay the loan in full, irrespective of the plan, there is little chance this type of co-debt will impede completion of the plan. Therefore, no

reason justifies the classification of unsecured co-signed debt, acquired for the benefit of the co-signer, separately from other general unsecured debt. To do so would be unfair to the general unsecured creditors.

*Spokane Ry. Credit Union v. Gonzales (In re Gonzales),* 172 B.R. 320, 329 (E.D. Wash. 1994).

12.     Although the Debtor and the Daughter are both primarily liable for the Claim, the Daughter is the primary beneficiary of the loan from Wells Fargo, because the funds were used to pay her education expenses.  The Debtor argues that she, as a parent, will benefit from her Daughter's college education.  Even if she will benefit indirectly in the future from this education, the Debtor is not the beneficiary of the Agreement, and the practical necessity of allowing separate classification is currently not present in this case.  Of course, the Debtor would prefer to pay Walls Fargo in full through the Plan, so that less interest will accrue during the deferment period and the Daughter will not be burdened with the contractual payment amount when the Claim matures; however, that desire is distinguishable from the feeling of obligation which the drafters of the 1984 revisions to § 1322(b)(1) seemingly sought to accommodate. *See In re Lewman,* 157 B.R. 134, 136-37 (Bankr. S.D. Ind. 1992) (citing the legislative history of § 1322(b)(1) and finding that the debtors' attempt to classify separately the education loan incurred for their son's benefit, and guaranteed by the debtors, did "not comport with the purposes of the Codebtor Classification").  For a debtor to claim a benefit from co-signing a consumer debt, a debtor must receive some tangible and measurable benefit.  An esoteric and speculative anticipation of some derivational improvement is simply insufficient to justify a separate and distinctive classification of a co-signed consumer debt.  The Debtor has not shown that tangible and measurable benefit, and the separate and distinctive classification of the Claim is inappropriate and cannot survive plan confirmation.

13.     The impropriety of the proposed classification is amplified when the court considers that no payments are due currently under the Agreement.  Some courts cite 11 U.S.C. §

1301, governing the co-debtor stay, when determining whether a co-signed unsecured debt should be paid in full through a plan. As Judge Mitchell noted in *Linton*,

> Certainly, the protection offered by the co-debtor stay in § 1301(a), . . . which exists as much for the benefit of the debtor as the non-filing co-debtor . . . would be greatly undermined if such co-signed debts were not paid in full [through separate classification under § 1322(b)(1)], since one of the grounds for termination of the co-debtor stay is that the plan does not propose to pay the claim.

2011 Bankr. LEXIS 2939, at *6 (citing 11 U.S.C. § 1301(c)(2)). Judge Mitchell, acknowledging this and other considerations, ultimately allowed separate classification of the debtor's joint debts with his non-filing spouse. *Id.* at *9-10. In this case, though, the threat of co-debtor stay relief does not affect the Debtor, because the Claim has not matured. "Congress did not intend to permit debtors to accelerate the payment of cosigned consumer debts, to overpay such debts or to pay interest to which creditors are not entitled . . . ." *In re Russell*, 503 B.R. 788, 798 Bankr. S.D. Ohio 2013) (citing S. Rep. No. 65, 98th Cong., 1st Sess. (1983)).

14. The Daughter will not be rendered in default under the Agreement or be subject to collection actions by Wells Fargo during the deferment period if the Debtor does not pay Wells Fargo in full through her plan. The deferment period is scheduled to end during the Debtor's sixty-month applicable commitment period, but when it does, the Daughter presumably will have obtained an undergraduate degree and should be able to maintain payments under the Agreement. The deferment status of the Claim further persuades the court that separate classification of the Claim is inappropriate. *See Ramirez v. Bracher (In re Ramirez)*, 204 F.3d 595, 596 n.1 (5th Cir. 2000) (noting that evidence to support separate classification of a debt under § 1322(b)(1) may include a showing that failure to classify separately would impose a hardship on the co-debtor or detrimentally impact the debtor's ability to complete payments under the plan).

15.     Under the circumstances of this case, the proposed separate classification of the Claim is prejudicial to the Debtor's other general unsecured creditors and is not indicative of a good faith attempt to repay creditors.  A prerequisite to confirmation of a plan is that the plan be proposed in good faith. 11 U.S.C. § 1325(a)(3).  Confirmation of the Plan should be denied, and the Debtor should be permitted to file an amended plan which does not classify the Claim separately.  Absent separate classification, Wells Fargo will still be entitled to receive *pro rata* distributions as a general unsecured creditor.  Payments under the plan will allow for payment of interest and satisfy some portion of the Claim's accruing interest; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.     The Chapter 13 Trustee's Objection to Confirmation be, and hereby is, sustained;

2.     Confirmation of the Debtor's Chapter 13 Plan filed on March 4, 2019 be, and hereby is, denied; and

3.     The Debtor shall have thirty days from the date of this Order to file an amended Chapter 13 plan.

END OF DOCUMENT